**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ADDIE BROOKS o/b/o B.G.H.,**

    **Plaintiff,**

-vs-                                                                            **Case No. 6:10-cv-439-Orl-28DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

    **Defendant.**
_____

## MEMORANDUM OPINION & ORDER

On behalf of B.G.H., Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying the claim for Supplemental Security Income (SSI) under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is **ORDERED** that the decision of the Commissioner is **REVERSED and REMANDED.**

## I.  BACKGROUND

### A.  Procedural History

On October 6, 2007, an application for childhood Supplemental Security Income (SSI) was protectively filed for the minor child, B.G.H. (the "Child") by his mother (Plaintiff), alleging that the

Child was disabled since October 6, 2007 due to attention deficit hyperactivity disorder, a mathematics learning disorder, and depression. R. 42, 43, 117. Plaintiff's claim was denied initially and upon reconsideration. R. 45-47, 51-53. On October 16, 2008, Plaintiff timely requested a hearing before Administrative Law Judge, Irwin Bernstein (hereinafter referred to as "ALJ") which was held on May 26, 2009. R. 9- 13[1]. In a decision issued August 31, 2009, the ALJ found the Child not disabled as defined under the Act. R. 24-35. Plaintiff filed a Request for Review of Hearing Decision/Order, which the Appeals Council denied on January 20, 2010. R. 4-6. Plaintiff filed this action for judicial review on March 24, 2010. Doc. No. 1.

### B.     Medical History and Findings Summary

The Child's medical history is set forth in detail in the ALJ's decision. By way of summary, the Child was treated for attention deficit hyperactivity disorder ("ADHD") and depression, and he was diagnosed with a Mathematics Disorder and a Disorder of Written Expression. R. 221.

After reviewing the Child's medical records and the testimony of the Child and his mother (Plaintiff), the ALJ found that the Child was a school-age child and had never engaged in substantial gainful activity. R. 27. The Child suffered from ADHD, combined type, a "severe" medically determinable impairment, but did not have an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 27. The ALJ further found that the Child's subjective complaints were not credible to the extent they were inconsistent with finding that the claimant does not have an impairment or combination of impairments that functionally equals the listings for the reasons described in the body of the decision. R. 30. The ALJ found that the evidence established the following functional limitations from the Child's impairments

---

[1]For some reason, the transcript is included a second time with a September 26, 2009 date. R. 15-23.

and reasonably related symptoms: less than marked limitation in the domain of acquiring and using information; marked limitation of functioning in the domain of attending and completing tasks[2]; less than marked limitations in the domain of interacting and relating with others; no limitations in the domain of moving about and manipulating objects; less than marked limitation in the domain of caring for himself; and no limitation in the domain of health and physical well-being. R. 30-35. Based on these limitations, the ALJ found that the Child's impairments did not functionally equal any listed impairment. R. 29. Accordingly, the ALJ determined that the Child had not been under a disability at any time through the date of the decision. R. 35.

Plaintiff now asserts six errors. First, Plaintiff contends that the ALJ and Appeals Council erred in failing to develop the record and Plaintiff was prejudiced by a lack of representation at the video-conference hearing. Second, Plaintiff contends the Appeals Council erred in failing to remand based on new and material evidence Plaintiff submitted, and in failing to provide reasons for its denial of review. Third, Plaintiff contends that the ALJ erred in failing to address or consider the severity of the child's diagnosed Math and Written Expression Disorders. Fourth, Plaintiff argues that the ALJ erred in failing to find the child's depression and adjustment disorder to be severe and in failing to consider them throughout the disability process. Fifth, Plaintiff argues that the ALJ failed to specify the weight he assigned to each of the opinions and failed to provide adequate cause for rejecting the opinions of the treating psychiatrist and consultive examining psychologist. Finally, Plaintiff contends that substantial evidence does not support the ALJ's finding that the child's impairments do not meet, equal or functionally equal a listing. For the reasons that follow, the Commissioner's decision is **REVERSED** and **REMANDED**.

---

[2]The ALJ incorrectly stated that "[t]he record does not contain any information that would indicate that the claimant has any marked limitations" (R. 29) which is not accurate since the ALJ also found the Child had marked limitation of functioning in the domain of attending and completing tasks. R. 31-32.

## II.      STANDARD OF DISABILITY AND STANDARD OF REVIEW

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, the Child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. The rules[3] follow the three-step sequential evaluation, under which SSA will consider: (1) whether the child is working; (2) whether the child has a medically determinable "severe" impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings.  20 C.F.R. § 416.924.  Whether a child meets the "listing-level severity" standard is dependent upon whether the child has marked limitations in two broad areas of development or functioning or extreme limitation in one of those areas. 20 C.F.R. § 416.926a. Under the regulations for children, there are six domains used to determine a child's functional equivalence: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a.

Whether a child meets the "listing-level severity" standard is dependent upon whether the child has "marked" limitations in two broad areas of development or functioning or "extreme" limitation in one of those areas. 20 C.F.R. § 416.926a(d).  In assessing whether the Child has

---

[3]On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits based on disability such that a child seeking SSI benefits based on disability will be found disabled if he or she has a medically determinable impairment "which results in marked and severe functional limitations," and which meets the statutory duration requirement. *Brawdy v. Barnhart*, No. Civ. A. SA01-CA-0835F, 2003 WL 1955839, at *3-4 (W.D. Tex. Mar. 27, 2003) (internal citations omitted). The final rules became effective on January 2, 2001. *Id.*

"marked" or "extreme" limitations, the ALJ must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe, as well as the interactive and cumulative effects of the child's impairment or combination of impairments individually in each domain. 20 C.F.R. § 416.926a(c). A marked limitation "seriously interferes" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation is one that interferes very seriously with a child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982) (internal quotations omitted).

The court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the decision is supported by substantial evidence. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981); *see also Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). The court may not reweigh the evidence or substitute its own judgment, even if the court finds that the weight of the evidence is against the SSA's decision. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusions. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Walker*, 826 F.2d at 999.

## III. ANALYSIS

The Child was diagnosed in July 2006 at Circles of Care with ADHD and adjustment disorder, with mother on dialysis for end stage renal failure, and father abandonment. R. 187, 189. The Child was prescribed medication and therapy at Circles of Care after seeing Dr. Andrews, a psychiatrist. R. 190. On January 28, 2008, Dr. Scott M. Kaplan performed a consultative examination of the Child, and opined he had ADHD, combined type, and exhibited acting out behavior which appeared secondary to his ADHD; his attention, concentration, task persistence, and memory functioning were poor; and he was likely to experience decompensation in a mainstream school setting due to ADHD and related psychological, cognitive, and behavioral deficits. R. 208. Medication and therapy were recommended and it was recommended that "he be placed in [EH-emotionally handicapped] classes." R. 208. Dr. Kaplan also recommended a general intellectual evaluation to assess the Child's cognitive abilities and assessed a guarded prognosis. R. 208.

A report completed in May 2008 indicated that the Child was functioning below grade level according to standardized benchmark, math diagnostic, and writing assessments; he had repeated second grade. R. 92. On August 4, 2008, at the request of the SSA, Dr. Kaplan performed a consultative learning disability evaluation in which he determined that the Child's full scale IQ score was in the average intellectual functioning range, but he had a Mathematics Disorder as well as a Disorder of Written Expression, because these composite standard scores were significantly lower than expected based on his contemporaneous Full Scale IQ score. R. 221. Dr. Kaplan recommended that the Child be considered for SLD classes due to these learning disorders. R. 222.

Plaintiff submitted to the Appeals Council the February 2009 report by Elizabeth Layton, Psy. D., who evaluated the Child at the request of the Child's treating psychiatrist, Dr. Andrews. R. 229-234. Plaintiff reported that the Child started having difficulties with sadness at age six; he often has suicidal thoughts, and tells other children or writes them down; he had recently become more

vocal about them and the previous year, he put his backpack and a seatbelt around his throat; the Child had difficulty with anger at school, including outbursts and aggressiveness; and he was impulsive, hyperactive, easily distracted, and had difficulties with attention and concentration. R. 229.

The Child repeated second grade and has an Individual Education Plan (I.E.P.) allowing him more one-on-one help, tutoring at aftercare, reading group, and a mentor once per week. R. 230. Plaintiff reported several stressful events in the Child's life including the deaths of grandfathers and uncles in 2006 through 2008, and the Child's mother's end stage renal failure requiring dialysis. R. 231. The Child reported to Dr. Layton that he had last experienced suicidal thoughts a few weeks earlier and that he most often feels sad and depressed. Dr. Layton observed that the Child displayed sad and dysthymic mood and congruent affect; judgment and insight were determined to be limited. R. 231. Dr. Layton performed personality and behavioral testing which revealed significant problems with attention, concentration, hyperactivity, impulsive behavior, depression, and anxiety. Results also showed feelings of insecurity, isolation, withdrawal tendencies, bereavement, and striving to achieve. R. 232-233. Dr. Layton diagnosed the Child with Major Depressive Disorder, single episode; ADHD combined type; Mathematics Disorder; and Disorder of Written Expression. R. 233.

### *A. Learning Disorders*

Plaintiff argues that the ALJ erred in failing to address or consider the severity of the Child's diagnosed math and written expression learning disorders. The ALJ determined in his decision that the Child suffered from only one severe impairment: ADHD, combined type. R. 27. She alleges that the ALJ erred in failing to include any discussion of the Child's math and written expression learning disorders diagnosed by consultive examiner, Dr. Kaplan, and then recognized by evaluating psychologist, Dr. Layton (evidence submitted to the AC). R. 220-222, 229-234. Plaintiff points out that in discussing the analysis of severity, the ALJ did refer to Dr. Kaplan's intelligence testing, but the ALJ cited only those test results which indicated that the Child's functioning fell within the

average range (R 28), and the ALJ failed to address or consider Dr. Kaplan's opinion that the Child had two learning disorders. Dr. Kaplan explained that the Child met the criteria for a diagnosis of Mathematics Disorder as well as a diagnosis of Disorder of Written Expression, as the child's additional composite standard scores were significantly lower than one would expect based upon his Full Scale IQ score. R. 220-22. Plaintiff contends that the ALJ should have considered Dr. Kaplan's recommendation that the Child be considered for SLD classes due to his learning disorders, and his guarded prognosis, as a severe impairment that should have been considered at all steps of the sequential disability evaluation process. R. 222. Plaintiff argues that the ALJ has extracted the portions of the testing results that supported his unfavorable decision and disregarded the results that would support a finding that the Child suffered a more limited level of functioning as a result of his learning disorders.

The Commissioner argues that Plaintiff fails to "clearly identify an opinion provided by Dr. Kaplan, which conflicts with the ALJ's findings." Doc. 23. The Commissioner concedes that the ALJ did not specifically note Dr. Kaplan's impression that Claimant had mathematics and written expression disorders, but argues that the ALJ is not required to discuss "each piece of evidence in the record." Doc. 23 at 20 (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). The Commissioner's description of the state of the case law in the Eleventh Circuit is not accurate with regard to medical opinion evidence in light of the Circuit's recent decision in *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. Jan.24, 2011).

In that case, the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 CRF §§ 404.1527(a)(2),

-8-

416.927(a)(2); *Sharfarz v. Bowen*, *supra)*. The Eleventh Circuit stated that " '[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.' " *Winschel*, 631 F.3d at 1178–79 (*quoting Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir.1981)). In this case, the ALJ failed to even discuss the Mathematics Disorder and Disorder of Written Expression (R. 221), based on Dr. Kaplan's objective testing conducted as part of the Child's full scale IQ test. R. 28. For the failure to address *all* of Dr. Kaplan's opinion evidence, rather than just his favorable opinion the Child was of "Average range of intelligence" (R. 220) the ALJ's decision would be subject to reversal and remand.

Moreover, the ALJ's decision was not based on substantial evidence, and the case must be remanded because Dr. Kaplan's diagnosis of the Child's learning disorders and recommendation for SLD classes directly and specifically impacts the ALJ's determination of the Child's limitations in the domain of acquiring and using information. The ALJ determined the Child had less than marked limitations in this domain even while recognizing that the Child had been retained in the second grade. R. 31. The ALJ erroneously opined that the Child had "been retained in the second grade, but this was basically due to an inability to stay on task and not his ability to acquire and use information." R. 31. The ALJ also ignored Plaintiff's statements that the Child had learning problems, could not read and understand stories in books or magazines, spell most 3-4 letter works, write a simple story with 6-7 sentences, did not understand money, tell time, and sometimes seemed to see numbers backwards. R. 111. In the domain of acquiring and using information[4], the Child's teachers opined that he had "serious" or "very serious" problems in reading and comprehending written material, math

---

[4]In the domain of attending and completing tasks, the same teacher opined he had serious or very serious problems in nine of thirteen categories. R. 129. The Commissioner concedes that the Child's school records indicate that he had "serious" or "marked" limitations in the area of attending or completing tasks, and he was easily distracted. R. 33, 93, 95, 102, 129. The ALJ's finding of "marked" limitation in this domain is not disputed.

problems, understanding and participating in class discussions, expressing ideas in written form, learning new material, and applying problem-solving skills in class; and obvious problems in comprehending oral instructions and recalling and applying previously learned material. R. 128. The Child was "constantly off task," and did "not display any independent skills." R. 128. He was working below grade level in all areas, and required one-on-one assistance in order to complete any classwork. R. 136, 140.

When the same teacher was contacted in February 2008 by SSA staff and asked about academic testing, the teacher stated she believed he could do the work but "more time may be necessary for him to achieve but he can do the work." R. 153. Although the report from May 2008 (at the end of second grade) has illegible portions (presumably in pencil that did not copy[5]), the written comments indicate the Child "gets distracted often and is continuously off task and out of seat which contributes to the above [acquiring and using information] problem areas." R. 164.

The ALJ also gave great weight to the opinions of the state agency reviewing psychologists, who both erred in their assessments of the Child's limitations in acquiring and using information. Although Dr. Jeffrey Pricket on February 25, 2008 noted Dr. Kaplan's consultative examination, and that the teacher's opinion that the Child "functions below grade level and has significant difficulty acquiring and using information," he opined the Child had less than marked limitations in acquiring and using information because it was "at least partly due to difficulty staying on task" and neglected to mention the recommendation for EH classes by Dr. Kaplan. R. 211, 214. In August 2008, the other reviewing psychologist, Dr. Weber, also marked the Child less than markedly limited in acquiring and using information even though he had Dr. Kaplan's Learning Disability Evaluation opining that the Child had a "diagnosable mathematics disorder at the present time" – but completely failed to mention the written expression disorder at all. R. 228. He merely described the Child as "of average ability

---

[5]The ALJ failed to note or discuss this report. R. 164.

with lower achievement skills" and having "mainly CPP [concentration, persistence, and pace] problems." R. 228. The ALJ's decision, which gave great weight to the state reviewing psychologists' opinions, was not based on substantial evidence because the reviewing psychologists ignored evidence of the Child's learning disorders and the recommendation for his placement in special education classes.

### *B. New and material evidence*

Plaintiff also argues that the AC erred in failing to remand the case after receiving Dr. Layton's psychological evaluation of the Child conducted in February 2009, which was submitted to the AC in January 2010 (R. 4), well after the ALJ's decision in August 2009.

When a plaintiff submits additional evidence to the Appeals Council and the Appeals Council denies review, the court must determine whether the Commissioner's decision is supported by substantial evidence on the record as whole. *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007); *Hummel v. Astrue*, No. 8:06-CV-725-T-EAJ, 2007 WL 2492460, *7 (M.D. Fla. Aug. 30, 2007) (under *Ingram*, the court reviews whether the decision to deny benefits is supported by substantial evidence in the record as a whole, including evidence submitted to the Appeals Council).

The ALJ determined that the Child suffered only from the severe impairment of ADHD, and did not find he suffered from any other severe impairments, although he noted that the Child's psychiatrist diagnosed Adjustment Disorder (R. 27) and school records reported the Child's difficulties including being overly sensitive to criticism, adjusting to changes in routine and having an unhappy mood. Plaintiff testified at the hearing that the Child suffers from depression and suicidal ideation. R. 11-12. Plaintiff argues the Child's adjustment disorder and depression are severe and as further evidence, she submitted Dr. Layton's February 2009 report to the AC.

Plaintiff argues that the personality and behavioral testing performed by Dr. Layton revealed significant problems with the Child's attention, concentration, hyperactivity, impulsive behavior, depression, and anxiety. Results also showed feelings of insecurity, isolation, withdrawal tendencies, bereavement, and striving to achieve, and the report provided a diagnosis of Major Depressive Disorder, and concurred with Dr. Kaplan's diagnoses of Mathematics and Written Expression Learning Disorders. R. 232-33.  Plaintiff contends that the AC erred in failing to remand, because Dr. Layton's report would have been likely to change the outcome of the decision, and the AC failed to offer any reasoning for denying the review in light of this evidence. R. 1.  The Commissioner argues that Dr. Layton's report lends further support to the ALJ's determination that Claimant had marked limitations in attending and completing tasks (R. 32), but argues that the report does not reflect that Claimant had marked or extreme limitations in any of the other domains.

As Plaintiff points out, the ALJ repeatedly referred to a lack of evidence to support the allegations of impairments other than ADHD (R. 27, 30), thus, the ALJ did not seriously consider the Child's additional impairments of depression, adjustment disorder, and learning disorders (described more fully above) and he did not evaluate their severity.  On remand, the ALJ will be required to address the Child's impairments of depression and adjustment disorder (in addition to the learning disorders identified by Dr. Kaplan as explained above).  *See Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. Jan. 24, 2011) (the ALJ must state with particularity the weight given to statements of physicians reflecting judgments about the nature and severity of a claimant's impairments and restrictions).

### *C. Duty to develop the record*

Plaintiff argues that she was unrepresented at the hearing and the ALJ failed to fully develop the record with more complete psychiatric records.  The Commissioner argues that the burden is on Plaintiff to obtain and submit the appropriate records, and Plaintiff had a chance to review the records

in the file when she was handed a compact disc containing the record at the hearing and was instructed on how she could review its contents.

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997). Records from Circles of Care, Florida Institute of Technology, and updated 2008-09 records from the Child's school (including an IEP) were not obtained by the ALJ[6], in spite of the portion of his decision that said SSA had "attempted to update the medical records at the initial, reconsideration, and hearing level, but has not been able to secure any additional documentation." R. 30.

On remand, the ALJ will be required to update the medical record, including records from Circles of Care, Florida Institute of Technology, and updated records from the Child's school.

# CONCLUSION

For the reasons set forth in this Order, the decision of the Commissioner is inconsistent with the requirements of law and is not supported by substantial evidence. On remand of the case, the ALJ will be required to obtain updated records, hold a new hearing if warranted, and assess whether that the Child's impairments meet, equal or functionally equal Listing 112.11 for Attention Deficit Hyperactivity Disorder[7]. Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

---

[6] Plaintiff also contends that she supplied additional unidentified records at the hearing, which are not part of the record. Doc. 19 at 12.

[7] Plaintiff contends that the Child functionally meets a Listing because his ADHD results in marked limitations in the domain of Acquiring and Using Information as well as an extreme or marked limitation in the domain of Attending and Completing Tasks. *See* 20 CFR § 416.926a(a).

**DONE** and **ORDERED** in Orlando, Florida on July , 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record